IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL R. NELSON | : | CIVIL ACTION |
| v. | : | |
| DAVID L. BROWN, ET AL. | : | NO. 17-3232 |

**MEMORANDUM**

**Padova, J.**                                                                                          **April 24, 2018**

Plaintiff Michael R. Nelson has filed the instant action seeking to compel the mediation or arbitration of certain disputes arising out of the dissolution of the law firm of Nelson Levine de Luca & Hamilton, LLC (the "Firm") in accordance with the procedures set forth in the Pennsylvania Bar Association's Lawyer Dispute Resolution Program Rules (the "PBA Program"). Two of the Defendants, William O. Krekstein and David L. Brown, have filed Answers to the Amended Complaint. The remaining Defendants have filed Motions to Dismiss the Amended Complaint. In response, Plaintiff has filed a Cross-Motion to Compel Arbitration. For the following reasons, we deny all of the Motions.

**I.      FACTUAL BACKGROUND**

The Amended Complaint alleges the following facts. The parties were all members of the Firm, which is a Pennsylvania limited liability company. (Am. Compl. ¶ 16.) The rights and obligations of the parties, who were members of the Firm, are governed by the Amended and Restated Limited Liability Company Operating Agreement (the "Operating Agreement") and the Amended and Restated Buy-Sell Agreement (the "Buy-Sell Agreement"). (Id. ¶ 2, Exs. A, B.) Both of the Agreements require the parties to "resolve all claims and disputes arising under or relating to" the Agreements through mediation and, if necessary, through arbitration under the PBA Program. (Id. ¶ 2; Ex. A § 9.13; Ex. B § 7.13.) Defendants have received notices and

demands for mediation and arbitration from Plaintiff and the Pennsylvania Bar Association ("PBA"), but have refused to participate in the PBA dispute resolution process. (Id. ¶ 3.)

Plaintiff seeks to mediate, and if necessary arbitrate, claims against Defendants arising from the following:

(a) the repayment of a $4 million line of credit with First Niagara Bank. Plaintiff Nelson has had to contribute more than his proportionate share to repay that line of credit, and he has also had to pay income taxes on certain sources of income used for the repayment. This implicates the Defendants' duty, pursuant to Section III of the Operating Agreement and paragraph 3.1.1 of the Buy-Sell Agreement, to contribute capital. Plaintiff Nelson further seeks indemnification from the Defendants for the amounts he has paid beyond his proportionate share of liability.

(b) Defendants taking advance draws that exceeded their entitlement to distributions for 2014, in violation of Section IV of the Operating Agreement. Despite demand, Defendants have refused to repay the excess advance draws that they received and, instead, Defendants have tried to characterize those advance draws as guaranteed payments. This has diluted Nelson's interest. In addition to constituting breaches of the Operating Agreement, this conduct by Defendants also constitutes breaches of the fiduciary duties that the Defendants owe to Plaintiff Nelson. This conduct, and the fact that all of the Defendants left the firm without giving proper notice, also implicates the winding-up process set forth at Section VII of the Operating Agreement, by placing undue burdens on Nelson.

(c) While all Defendants took advance draws to which they were not entitled, Defendants Clark, de Luca, and Levine took advance draws in 2014 simultaneously with planning and preparing to launch their (respective) new, competing law firms, at a time when they were supposed to be devoting all of their professional time and efforts to the law firm they shared with Plaintiff Nelson. This conduct violates paragraph 5.3 of the Operating Agreement and also constitutes additional breaches of fiduciary duty by these Defendants.

(Id. ¶ 18.)

The parties agreed, in both the Operating Agreement and the Buy-Sell Agreement, that "'any and all claims, controversies and disputes . . . arising under or relating to [the Agreements] shall be settled through mediation conducted in accordance with the then-existing rules of the

2

[PBA Program].'" (Id. ¶ 20 (quoting Operating Agreement § 9.13); see also id. ¶ 21 (quoting Buy-Sell Agreement § 7.13.) They further agreed that "'[a]ny DISPUTE not resolved through such mediation shall be submitted to binding arbitration conducted in accordance with the then existing rules of the [PBA Program].'" (Id. ¶ 20 (quoting Operating Agreement §9.13; see also id. ¶ 21 (quoting Buy-Sell Agreement § 7.13).)

On January 23, 2017, Plaintiff invoked the mediation and arbitration process under the PBA Program by sending a notice to the PBA and Defendants of the existence of disputes among members of the Firm that require resolution. (Id. ¶ 24, Ex. D.) On February 6, 2017, the PBA sent a letter to Defendants notifying them of the request for dispute resolution under the PBA Program and asking that they sign a standard mediation agreement and pay the required fee. (Id. ¶ 25, Ex. E.) None of the Defendants has signed the mediation agreement or paid the fee. (Id. ¶ 26.) All of the Defendants have thus failed and refused to participate in mediation and arbitration under the PBA Program. (Id. ¶ 27.)

The Complaint asserts two claims for relief. Count I asks the Court to compel mediation and, if necessary, arbitration, pursuant to § 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1-14 (the "FAA"). Count II asks the Court to require the parties to participate in mediation and, if necessary, arbitration, pursuant to the Pennsylvania Uniform Arbitration Act, 42 Pa. Cons. Stat. Ann. § 7304. Defendant John M. Clark has filed a Motion to Dismiss for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Defendants Kenneth T. Levine and Daniel J. de Luca have filed a Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Defendants Claudia D. McCarron and John F. Mullen have also filed a Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Rule

3

12(b)(6). Defendant Michael A. Hamilton has filed a Motion to Dismiss for failure to join an indispensable party pursuant to Rule 12(b)(7). Plaintiff has, in turn, filed a Motion to Compel Arbitration.

## II. THE ARBITRATION ACT

The Amended Complaint seeks an order pursuant to Section 4 of the FAA compelling the mediation and, if necessary, arbitration of the claims described in Paragraph 18 through the PBA Program. Section 4 of the FAA provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. When it enacted the FAA, "Congress 'expressed a strong federal policy in favor of resolving disputes through arbitration.'" Flintkote Co. v. Aviva PLC, 769 F.3d 215, 219 (3d Cir. 2014) (quoting Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009)). "[W]hen a party resists arbitration under an existing arbitration clause . . . the FAA allows a district court to compel, or enjoin, arbitration as the circumstances may dictate." John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 136 (3d Cir. 1998) (citing 9 U.S.C. §§ 3, 4; PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990)).

When we decide "whether a party may be compelled to arbitrate under the FAA, we first consider '(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" Flintkote, 769 F.3d at 220 (quoting Century Indem., 584 F.3d at 527). At this stage of the litigation, none of the Defendants disputes that the Operating Agreement and Buy-Sell Agreement contain valid agreements to mediate and, if necessary, to arbitrate under the PBA

4

Program. When a court is "deciding whether the parties have agreed to submit a particular grievance to arbitration, [the] court is not to rule on the potential merits of the underlying claims." AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986). Thus, we "have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." Id. at 650; see also Silfee v. Automatic Data Processing, Inc., 696 F. App'x 576, 577 (3d Cir. 2017) (stating that, when it decides whether to compel arbitration, "the role of the court 'is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator'" (quoting Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 478 (9th Cir. 1991))). When we decide whether the dispute "in question falls within the scope of [a] valid [arbitration] agreement," Flintkote, 769 F.3d at 220, "'there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Century Indem., 584 F.3d at 524 (alteration in original) (quoting AT&T Techs., 475 U.S. at 650).

## III. THE MOTIONS TO DISMISS

### A. Rule 12(b)(1)

Defendants Clark, Levine, de Luca, McCarron, and Mullen contend that this action should be dismissed because Plaintiff lacks standing to move to compel Defendants to arbitrate the claims described in Paragraph 18 of the Amended Complaint. "'A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.'" Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014)

(alteration in original) (quoting Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007)).[1] "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing [standing]." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990)). To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992); Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-181 (2000)).

Clark, Levine, de Luca, McCarron, and Mullen have brought facial attacks on standing. Consequently, we consider the "claim on its face" and determine whether it is "insufficient to invoke the subject matter jurisdiction of the courts" due to some "jurisdictional defect." Constitution Party of Pa., 757 F.3d at 358. This type of attack is judged under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). Id. Consequently, we "'only consider the allegations of the complaint and documents referred therein and attached thereto, in the light most favorable to the plaintiff.'" Id. (quoting In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)).

Clark argues that Plaintiff lacks standing to assert the claims described in Paragraph 18 of the Amended Complaint because he has not suffered an injury in fact. According to Clark, any injuries caused by the alleged acts of Defendants were suffered by the Firm or by First Niagara Bank. Defendants Levine, de Luca, McCarron, and Mullen similarly argue that Plaintiff did not suffer an injury in fact because the parties' duties under the Operating

---

[1] Levine, de Luca, McCarron, and Mullen all argue that the Amended Complaint should be dismissed for lack of standing pursuant to Rule 12(b)(6). However, since lack of standing should be addressed pursuant to Rule 12(b)(1), Constitution Party of Pa., 757 F.3d at 357 (citation omitted), we consider their arguments, together with Clark's, pursuant to Rule 12(b)(1).

6

Agreement and the Buy-Sell Agreement were owed to the Firm, and not to each other, making the Firm the only entity that has standing to assert claims for violation of those Agreements.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560). "An injury is 'concrete' if it is real, or distinct and palpable, as opposed to merely abstract, and is sufficiently particularized if 'it affect[s] the plaintiff in a personal and individual way.'" Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 278 (3d Cir. 2014) (alteration in original) (quoting New Jersey Physicians, Inc. v. President of the United States, 653 F.3d 234, 238 (3d Cir. 2011)).

Paragraph 18 of the Amended Complaint alleges that Plaintiff was injured by the actions of Defendants because he personally had to pay more than his proportionate share to repay the line of credit to First Niagara Bank and because his interest in the Firm was diluted by Defendants' taking excessive advance draws that they did not repay. We conclude that the Amended Complaint alleges that Plaintiff suffered a concrete and particularized injury and, therefore, that it plausibly alleges that Plaintiff suffered an injury in fact. Consequently, we deny the Motions to Dismiss filed by Clark, Levine, de Luca, McCarron, and Mullen to the extent that they argue that Plaintiff lacks standing to seek an order compelling arbitration of the claims described in Paragraph 18 of the Amended Complaint.

    B.    Rule 12(b)(6)

        1.    Legal Standard

Clark, Levine, de Luca, McCarron, and Mullen all argue that the Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering a motion to dismiss pursuant to

Rule 12(b)(6), we consider "only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)). A plaintiff's pleading obligation is to set forth "'a short and plain statement of the claim,'" which gives "'the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2), and Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).

        2.       The Claims Described in Paragraph 18 of the Amended Complaint

McCarron and Mullen argue that the Amended Complaint should be dismissed because it fails to plead sufficient facts to state a plausible claim that Plaintiff has an arbitrable dispute with Defendants. As we discussed above, Paragraph 18(a) of the Amended Complaint alleges that Plaintiff seeks to mediate and, if necessary, arbitrate claims through the PBA Program concerning the repayment of the First Niagara Bank line of credit because Defendants caused him to "contribute more than his proportionate share to repay that line of credit." (Am. Compl. ¶ 18(a).) Paragraph 18(a) further alleges that those claims arise under Sections III of the Operating

Agreement and 3.1.1. of the Buy-Sell Agreement. (Id.) Section III of the Operating Agreement governs the parties' obligations with respect to the Firm's Capital and Capital Accounts. (See Operating Agreement § III.) Section 3 of the Buy-Sell Agreement describes "Triggering Events." (See Buy-Sell Agreement § 3.) One of those Triggering Events is "the failure of the SHAREHOLDER to timely contribute the SHAREHOLDER'S PROPORTIONATE SHARE of an ADDITIONAL CAPITAL CONTRIBUTION in accordance with Section 3.2 and/or Section 3.7.2.2 of the OPERATING AGREEMENT." (Id. § 3.1.1.) We conclude that Paragraph 18(a), which alleges that Plaintiff seeks to mediate and, if necessary, arbitrate claims arising from Defendants failure to pay their proportionate share of the line of credit, describes claims that on their face plausibly fall within the scope of Sections III of the Operating Agreement and 3.1.1 of the Buy-Sell Agreement.

Paragraphs 18(b) and (c) of the Amended Complaint allege that Plaintiff seeks to mediate and, if necessary, arbitrate claims that Defendants took excessive advance draws, left the Firm without giving proper notice, and devoted professional time to creating a new law firm rather than working for the Firm. (Am. Compl. ¶¶ 18(b)-(c).) Paragraphs 18(b) and (c) further allege that these claims arise from Sections IV, V, and VII of the Operating Agreement and breach of the fiduciary duties that Defendants owed to Plaintiff. (Id.) Section IV of the Operating Agreement pertains to distributions to members of the Firm. (See Operating Agreement § IV.) Section V pertains to the management of the Firm, and Section 5.3 specifically provides that "Each SHAREHOLDER shall devote all of his professional time and efforts exclusively to rendering professional legal services on behalf of the [Firm] and shall not render services, whether or not for compensation, other than on behalf of the [Firm]." (Id. § 5.3.) Section VII of the Operating Agreement pertains to the dissolution, liquidation, and termination of the Firm.

9

We conclude that the allegations of Paragraphs 18(b) and (c) appear on their face to plausibly fall within the scope of Sections IV, V and VII of the Operating Agreement.

We find that the claims described in Paragraph 18 of the Amended Complaint plausibly fall within the scope of the Operating Agreement and the Buy-Sell Agreement. Both of these Agreements contain clauses requiring that "any and all claims, controversies and disputes . . . arising under or relating to this AGREEMENT shall be settled through" mediation and, if necessary, arbitration in accordance with the procedures set forth in the PBA Program. (Operating Agreement § 9.13; <u>see also</u> Buy-Sell Agreement § 7.13.) We conclude, accordingly, that the Amended Complaint alleges sufficient facts to establish that Plaintiff seeks to mediate and, if necessary, arbitrate, "a merits-based dispute" that "falls within the scope of" valid agreements for mediation and arbitration under PBA Program. <u>Flintkote</u>, 769 F.3d at 220. Accordingly, we deny the Motion to Dismiss filed by McCarron and Mullen to the extent that it argues that the Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because it fails to plead sufficient facts to state a facially plausible claim that Plaintiff has an arbitrable dispute with Defendants.

Clark contends that the Amended Complaint should be dismissed because Paragraph 18 fails to state claims against him upon which relief can be granted. Specifically, Clark argues that Paragraph 18(a) fails to state a claim against him for failure to repay the $4 million line of credit with First Niagara Bank because the Amended Complaint does not specifically allege that he has failed to repay his share of the line of credit. Clark also argues that Paragraphs 18(b) and (c) of the Amended Complaint fail to state cognizable breach of fiduciary duty claims against him because the Pennsylvania Uniform Limited Liability Company Act of 2016, 15 Pa. Cons. Stat.

Ann. § 8811 et seq., does not impose fiduciary duties on non-managing members of a limited liability company.

Clark appears to misunderstand the role of this Court in an action pursuant to Section 4 of the FAA. As we discussed above, we may consider only whether the dispute described in the Amended Complaint falls within the scope of a valid agreement to arbitrate. See Flintkote, 769 F.3d at 220 (quoting Century Indem., 584 F.3d at 527). We may not decide the merits of that dispute, which would necessarily include considering Clark's defenses to the claims that Plaintiff seeks to raise in mediation and, if necessary, arbitration. See Silfee, 696 F. App'x at 577 (stating that "the role of the court 'is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator'" (quoting Republic of Nicaragua, 937 F.2d at 478)). Clark's argument that Paragraph 18 does not state a claim against him upon which relief can be granted is clearly an argument regarding Clark's defenses to the claims described in Paragraph 18, not an argument with regard to the arbitrability of those claims. Consequently, we deny Clark's Motion to Dismiss to the extent that he contends that the Amended Complaint fails to state a claim against him upon which relief may be granted with respect to the claims described in Paragraph 18.[2]

3. Waiver

Defendants Clark, Levine, and de Luca also argue that the Amended Complaint should be dismissed because Plaintiff waived his right to seek mediation or arbitration of his claims because he filed a lawsuit against de Luca and Levine in the Montgomery County Court of

---

[2] We also note that Clark's characterization of the Pennsylvania Uniform Limited Liability Company Act may be incorrect, as that Act specifically provides that "[a] member of a member-managed limited liability company owes to the company and, subject to section 8881(b) (relating to direct action by member), the other members the duties of loyalty and care stated under subsections (b) and (c)." 15 Pa. Cons. Stat. Ann. § 8849.1.

Common Pleas after those two Defendants left the Firm in August 2014 (the "Montgomery County Lawsuit"). "'[A] court may refuse to enforce an arbitration agreement where, for example, the alleged defaulting party has acted inconsistently with the right to arbitrate,' and 'we will not hesitate to hold that the right to arbitrate has been waived where a sufficient showing of prejudice has been made by the party seeking to avoid arbitration.'" Nino v. Jewelry Exch., Inc., 609 F.3d 191, 208 (3d Cir. 2010) (first quoting Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 981 (2d Cir. 1996); and then quoting Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 223 (3d Cir. 2007)). However, "'[c]onsistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred, and waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.'" Id. (quoting PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1068–69 (3d Cir. 1995)). The United States Court of Appeals for the Third Circuit has instructed that the following factors be considered in determining whether a party has waived arbitration:

> [1] the timeliness or lack thereof of a motion to arbitrate . . . [; 2] the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; [3] whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; [4] the extent of its non-merits motion practice; [5] its assent to the court's pretrial orders; and [6] the extent to which both parties have engaged in discovery.

Id. at 208-09 (alterations in original) (quoting Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 926-27 (3d Cir. 1992)).

Clark, Levine, and de Luca do not address any of these factors in their argument. Rather, they simply rely on the fact that Levine and de Luca were sued in the Montgomery County Lawsuit as establishing waiver. Levine and de Luca have submitted a copy of the Verified Amended Complaint from the Montgomery County Lawsuit in support of their claim that

Plaintiff has waived his right to seek arbitration of the claims described in Paragraph 18 of the Amended Complaint.³ (See Levine and de Luca Mot., Ex. A.) It is clear from the Verified Amended Complaint that Plaintiff was not a party to the Montgomery County Lawsuit. The Montgomery County Lawsuit was brought by the Firm against Levine, de Luca, and six other defendants who are not parties to the instant lawsuit. (See id.) A limited liability company such as the Firm "is an entity distinct from its member or members," which "has the capacity to sue and be sued in its own name." 15 Pa. Cons. Stat. Ann. §§ 8818(a), 8819(b). Clark, Levine, and de Luca cite no authority pursuant to which we could ascribe the Firm's filing of a lawsuit against them to Plaintiff. We thus cannot infer that Plaintiff waived his right to compel arbitration from the fact that the Firm filed a lawsuit against Levine and de Luca.

We conclude, based on the fact that Plaintiff was not a party to the Montgomery County Lawsuit, that Plaintiff has not waived his right to seek mediation and, if necessary, arbitration of the claims described in Paragraph 18 of the Amended Complaint. We further note that the following factors also weigh against finding that Plaintiff has waived his right to seek mediation and, if necessary, arbitration of those claims. First, even if we could ascribe the filing of the Montgomery County Lawsuit to Plaintiff, that suit sought injunctive relief against Levine and de Luca and claims for injunctive relief are excluded from the agreement to mediate and, if

---

³ We may consider the Verified Amended Complaint from the Montgomery County Lawsuit in the context of the Motions to Dismiss because it is a public record. See Mayer, 605 F.3d at 230; see also Wright v. Phelan, Hallinan & Schmieg, LLP, Civ. A. No. 09-3538, 2010 WL 786536, at *1 n.1 (E.D. Pa. Mar. 8, 2010) ("Matters of public record, in this context, have been understood to include 'copies of pleadings and other materials filed in other courts.'" (quoting Caldwell Trucking PRP Grp. v. Spaulding Composites Co., 890 F. Supp. 1247, 1252 (D.N.J. 1995), additional citations omitted); Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 256 n.5 (3d Cir. 2006) (stating that "'[t]o resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint.'" (quoting S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999))).

necessary, arbitrate disputes contained in the Operating Agreement and the Buy-Sell Agreement. (See Operating Agreement § 9.13; Buy-Sell Agreement § 7.13.) Second, the claims asserted by the Firm against Levine and de Luca in the Montgomery County Action pertain to Levine's and de Luca's refusal to pay to the Firm their contingency fees from subrogation matters started while they were members of the Firm. (See Levine and de Luca Mot. Ex. A ¶¶ 27-30, 37-89.) Those contingency fees are not included in the claims that Plaintiff seeks to mediate and, if necessary, arbitrate through the PBA Program. (See Am. Compl. ¶ 18.) Third, Clark, Levine, and de Luca don't claim to have suffered any prejudice as a result of the previous lawsuit in connection with the instant demand for mediation and, if necessary, arbitration. Accordingly, we conclude that Plaintiff has not waived the right to seek arbitration of the claims described in Paragraph 18 of the Amended Complaint and we deny the Motions to Dismiss filed by Clark, Levine, and de Luca as to this argument.[4]

### 4. Failure to Make a Demand for Mediation/Arbitration

Levine, de Luca, McCarron, and Mullen argue that the Amended Complaint fails to state a claim upon which relief can be granted under § 4 of the FAA because Plaintiff has not been aggrieved by the failure of another party to arbitrate a claim. See 9 U.S.C. § 4 (stating that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written

---

[4] Levine and de Luca also argue that the Amended Complaint should be dismissed because the claims described in Paragraph 18 of the Amended Complaint were released by the Confidential Settlement Agreement entered into by the parties to the Montgomery County Lawsuit. We cannot consider this argument because release is a defense to the claims described in Paragraph 18 of the Amended Complaint, not a defense to arbitrability. See Siflee, 696 F. App'x at 577 (quotation omitted). Moreover, Levine and de Luca have made no attempt to establish that we can consider the Confidential Settlement Agreement, which is not mentioned in or attached to the Amended Complaint, in the context of this Motion to Dismiss. Levine and de Luca do not assert that the Confidential Settlement Agreement is a public record and it was not filed on the docket of the Montgomery County Lawsuit. Consequently, we cannot consider the Confidential Settlement Agreement in connection with Levine and de Luca's Motion to Dismiss, and we deny the Motion to Dismiss with respect to this argument. See Mayer, 605 F.3d at 230.

agreement for arbitration may petition any United States district court which . . . would have jurisdiction under title 28 . . . for an order directing that such arbitration proceed in the manner provided for in such agreement"). The Amended Complaint alleges that Plaintiff "invoked the mediation and arbitration process under the rules of the PBA Program by sending an appropriate notice to the Pennsylvania Bar Association, and all Defendants, of the existence of claims and disputes among the members of the Firm that require resolution." (Am. Compl. ¶ 24.) Exhibit D to the Amended Complaint includes an email sent by Plaintiff on January 23, 2017 to Louann Bell, the Committee Relations Coordinator for the Pennsylvania Bar Association. (Am. Compl. Ex. D at 5 of 7.) All of the Defendants to this action were copied on that email. (Id.) The subject of the email is described as "Nelson Levine de Luca & Hamilton/Nelson Brown & Co." (Id.) The email states "Lou Ann, this follows my notice to the Pennsylvania Bar Association that the above named firm seeks to mediate and if necessary arbitrate a resolution of all disputes between the shareholders." (Id.)

Levine, de Luca, McCarron, and Mullen all contend that Plaintiff is not himself aggrieved by Defendants' failure to participate in mediation under the PBA Program because the Firm made the request for mediation in the January 23, 2017 email and, therefore, Plaintiff did not personally take any steps to effectuate a mediation or arbitration of his own personal claims. However, while the Firm is named in the subject line of the January 23, 2017 email, the email was sent by Plaintiff, from a personal email account. (See id.) Moreover, the text of the January 23, 2017 email makes it clear that the disputes for which mediation and, if necessary, arbitration was requested were disputes between the shareholders of the Firm, not disputes between the Firm and its shareholders. (See id.) Viewing the allegations of the Amended Complaint and its exhibits in the light most favorable to Plaintiff, we find that the January 23, 2017 email was a

15

step taken by Plaintiff to effectuate the mediation and, if necessary, arbitration of his own personal claims. Consequently, we deny the Motions to Dismiss filed by both Levine and de Luca and by McCarron and Mullen with respect to their arguments that the Amended Complaint fails to state a claim pursuant to § 4 of the FAA because Plaintiff has not been aggrieved by their failure to mediate and, if necessary, arbitrate since he did not personally take steps to effectuate the mediation and, if necessary, arbitration of his claims.[5]

C. Rule 12(b)(7)

Defendant Hamilton has moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary and indispensable party, namely, the Firm. Hamilton contends that this action must be dismissed because the Firm is an indispensable party to the claims described in Paragraph 18 of the Amended Complaint and joining the Firm as a party to this action would destroy our diversity jurisdiction.

Rule 12(b)(7) provides that a party may move to dismiss a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19 provides as follows:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

---

[5] Levine and de Luca also assert that they cannot be compelled to participate in mediation and, if necessary, arbitration under the PBA program because they did not fail or refuse to arbitrate as required by § 4 of the FAA. Levine and de Luca maintain that they merely advised Plaintiff and Bell that they would not be in a position to proceed to mediation/arbitration until they had more information about the nature of the claims that were being brought against them. This naked assertion, however, is not supported by the allegations of the Amended Complaint or any other document on the record before us. Consequently, we deny the Motion to Dismiss brought by Levine and de Luca to the extent that they claim that the Amended Complaint should be dismissed because they did not fail to refuse or arbitrate.

> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19. We use a two-step process to determine whether a lawsuit should be dismissed pursuant to Rule 12(b)(7). First we "determine whether the absent [party] should be joined as [a] 'necessary' part[y] under rule 19(a)." General Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007). "If they should be joined, but their joinder is not feasible inasmuch as it would defeat diversity of citizenship (as would be the case here), we next must determine whether the absent part[y is] 'indispensable' under Rule 19(b)." Id. "Should we answer this question in the affirmative, the action cannot go forward." Id. (citing Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 404 (3d Cir. 1993)). To determine whether a necessary party is indispensable, we consider the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice either that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided; (3) whether a judgment without the person would be adequate; and (4) whether the plaintiff would otherwise have an adequate remedy if the action were dismissed.

Tullett Prebon PLC v. BGC Partners, Inc., 427 F. App'x 236, 240 (3d Cir. 2011) (citing Fed. R. Civ. P. 19(b)).

Hamilton argues that the Firm is a necessary party to this lawsuit because the first dispute that Plaintiff describes in Paragraph 18 of the Amended Complaint concerns Defendants' alleged duty to contribute capital to the Firm and the second dispute described in Paragraph 18 concerns the Defendants' taking "advance draws" from the Firm in 2014 in violation of the Operating Agreement and their refusal to repay those advance draws to the Firm. (See Am. Compl. ¶¶ 18(a), (b).) Hamilton maintains that to the extent capital should be paid, or advance

17

draws repaid, the payment should be made to the Firm, which would benefit the Firm, not Plaintiff. Hamilton also suggests that the Firm may itself have claims that it could assert against Plaintiff with respect to the repayment of advance draws.

However, Hamilton's arguments assert a defense to the merits of Plaintiff's claims, not to the issue of arbitrability. We cannot determine in this proceeding whether the Defendants breached duties owed to the Firm rather than to Plaintiff because we are required to "leav[e] the merits of [Plaintiff's] claim[s] and any defenses to the arbitrator." Silfee, 696 F. App'x at 577 (quotation omitted). Hamilton does not contend that the Firm is a necessary party to the determination of whether Plaintiffs' claims should be mediated and, if necessary, arbitrated as set forth in the Operating Agreement and the Buy-Sell Agreement. He also does not contend that there would be any impediment to the Firm being joined in such mediation and, if necessary, arbitration. Consequently, we deny Hamilton's Motion to Dismiss to the extent that he argues, pursuant to Rule 12(b)(7), that Plaintiff has failed to join an indispensable party.

## IV.   THE MOTION TO COMPEL ARBITRATION

Plaintiff has filed a Cross-Motion to Compel Arbitration and to stay this action until that mediation and, if necessary, arbitration has concluded. He asks that we grant his motion and immediately compel the Defendants to mediate and, if necessary, arbitrate the claims described in Paragraph 18 of the Amended Complaint, before all Defendants have answered the Amended Complaint. Plaintiff relies on Silfee, in which the Third Circuit vacated a district court decision delaying ruling on a motion to compel arbitration until after discovery on the merits of the Plaintiff's claims because "[a]rbitrability is a 'gateway' issue." 696 F. App'x at 577 (quoting Reyna v. Int'l Bank of Commerce, 839 F.3d 373, 378 (5th Cir. 2016)). However, Silfee involved a motion to compel arbitration filed by a defendant in response to the filing of a lawsuit in

federal court regarding the manner in which plaintiff's wages were paid, not in response to the filing of an action solely to compel arbitration pursuant to § 4 of the FAA. See id. at 578. The issue in Silfee was whether arbitrability should be considered prior to discovery on the merits of plaintiff's claims regarding the manner in which his wages were paid to him. Id. at 577-78. In this case, arbitrability is the only issue before us. Thus, Plaintiff asks us to decide the ultimate issue of this lawsuit before most of the Defendants have answered the Amended Complaint and the pleadings have closed. We conclude that Plaintiff's Cross-Motion to Compel Arbitration is, therefore, premature. See Golden Gate Nat'l Senior Care, LLC v. Stephany, Civ. A. No. 16-2614, 2016 WL 4124062, at *3 (E.D. Pa. Aug. 3, 2016) (concluding that motion to compel arbitration filed before defendant filed an answer to plaintiff's petition for order compelling arbitration was premature and "should not have been filed until the pleadings were closed"). Accordingly, we deny the Cross-Motion to Compel Arbitration without prejudice to Plaintiff filing a motion to compel arbitration once the pleadings are closed.

## V. CONCLUSION

For the reasons stated above, we deny Plaintiff's Cross-Motion to Compel Arbitration, as well as the Motions to Dismiss filed by Defendant John M. Clark; Defendants Kenneth T. Levine and Daniel J. de Luca; Defendants Claudia D. McCarron and John F. Mullen; and Defendant Michael A. Hamilton. An appropriate order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.