IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL R. NELSON | : | CIVIL ACTION |
| v. | : | |
| DAVID L. BROWN, ET AL. | : | NO. 17-3232 |

**MEMORANDUM**

**Padova, J.**                                                                                     January 28, 2019

Plaintiff Michael R. Nelson has filed the instant action pursuant to the Federal Arbitration Act ("FAA") seeking to compel the mediation or arbitration of certain disputes arising out of the dissolution of the law firm of Nelson Levine de Luca & Hamilton, LLC (the "Firm") in accordance with the procedures set forth in the Pennsylvania Bar Association's Lawyer Dispute Resolution Program Rules (the "PBA Program"). Plaintiff has filed a Motion to Compel Arbitration and Defendant Michael Hamilton has filed a Cross Motion for Judgment on the Pleadings or, in the Alternative, Summary Judgment. For the following reasons, we grant Plaintiff's Motion to Compel Arbitration and deny Hamilton's Motion.

**I.     FACTUAL BACKGROUND**

The parties were all members of the Firm, which is a Pennsylvania limited liability company. (Am. Compl. ¶ 16; Krekstein Ans. ¶ 16; Brown Ans. ¶ 16; Clark Ans. ¶ 16; McCarron Ans. ¶ 16; Mullen Ans. ¶ 16; Levine and de Luca Ans. ¶ 16.) All of the parties executed an Amended and Restated Limited Liability Company Operating Agreement (the "Operating Agreement") and an Amended and Restated Buy-Sell Agreement (the "Buy-Sell Agreement"). (Am. Compl. Exs. A, B.)

The Amended Complaint alleges that Plaintiff seeks to mediate, and if necessary arbitrate, claims against Defendants arising from the following:

(a) the repayment of a $4 million line of credit with First Niagara Bank. Plaintiff Nelson has had to contribute more than his proportionate share to repay that line of credit, and he has also had to pay income taxes on certain sources of income used for the repayment. This implicates the Defendants' duty, pursuant to Section III of the Operating Agreement and paragraph 3.1.1 of the Buy-Sell Agreement, to contribute capital. Plaintiff Nelson further seeks indemnification from the Defendants for the amounts he has paid beyond his proportionate share of liability.

(b) Defendants taking advance draws that exceeded their entitlement to distributions for 2014, in violation of Section IV of the Operating Agreement. Despite demand, Defendants have refused to repay the excess advance draws that they received and, instead, Defendants have tried to characterize those advance draws as guaranteed payments. This has diluted Nelson's interest. In addition to constituting breaches of the Operating Agreement, this conduct by Defendants also constitutes breaches of the fiduciary duties that the Defendants owe to Plaintiff Nelson. This conduct, and the fact that all of the Defendants left the firm without giving proper notice, also implicates the winding-up process set forth at Section VII of the Operating Agreement, by placing undue burdens on Nelson.

(c) While all Defendants took advance draws to which they were not entitled, Defendants Clark, de Luca, and Levine took advance draws in 2014 simultaneously with planning and preparing to launch their (respective) new, competing law firms, at a time when they were supposed to be devoting all of their professional time and efforts to the law firm they shared with Plaintiff Nelson. This conduct violates paragraph 5.3 of the Operating Agreement and also constitutes additional breaches of fiduciary duty by these Defendants.

(Id. ¶ 18.)

The parties agreed, in both the Operating Agreement and the Buy-Sell Agreement, that "any and all claims, controversies and disputes . . . arising under or relating to [the Agreements] shall be settled through mediation conducted in accordance with the then-existing rules of the [PBA Program]." (Operating Agreement § 9.13; see also Buy-Sell Agreement § 7.13.) The parties further agreed that "[a]ny DISPUTE not resolved through such mediation shall be submitted to binding arbitration conducted in accordance with the then existing rules of the [PBA Program]." (Operating Agreement §9.13; see also Buy-Sell Agreement § 7.13.)

2

On January 23, 2017, Plaintiff sent an email to Louann Bell, the Committee Relations Coordinator for the Pennsylvania Bar Association, on which all of the Defendants to this action were copied. (Am. Compl. Ex. D at 5 of 7.) The subject of the email is described as "Nelson Levine de Luca & Hamilton/Nelson Brown & Co." (Id.) The email states "Lou Ann, this follows my notice to the Pennsylvania Bar Association that the above named firm seeks to mediate and if necessary arbitrate a resolution of all disputes between the shareholders." (Id.) The text of the January 23, 2017 email makes it clear that the disputes for which Plaintiff sought mediation and, if necessary, arbitration were disputes between the shareholders of the Firm, i.e., disputes between Plaintiff and the Defendants to this action. (See id.) On February 6, 2017, the PBA sent a letter to Defendants notifying them of the request for dispute resolution under the PBA Program and asking that they sign a standard mediation agreement and pay the required fee. (Id. Ex. E.) None of the Defendants has signed the mediation agreement or paid the fee. (Id. ¶ 26; Krekstein Ans. ¶ 26; Brown Ans. ¶ 26; Clark Ans. ¶ 26; Mullen Ans. ¶ 26; McCarron Ans. ¶ 26; Hamilton Ans. ¶ 26; Levine and de Luca Ans. ¶ 26.)

Defendants John M. Clark, Claudia D. McCarron, John F. Mullen, Kenneth T. Levine, Daniel J. de Luca, and Michael A. Hamilton filed Motions to Dismiss the Amended Complaint. We denied those Motions on April 24, 2018. See Nelson v. Brown, Civ. A. No. 17-3232, 2018 WL 1933289 (E.D. Pa. Apr. 24, 2018). These Defendants all oppose the instant Motion to Compel Arbitration. Defendants William O. Krekstein and David L. Brown did not respond to the Motion to Compel Arbitration.

**II.    LEGAL STANDARD**

"'[W]here the . . . arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint), the FAA would favor resolving a motion to compel

3

arbitration under a motion to dismiss standard without the inherent delay of discovery.'" Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 773-74 (3d Cir. 2013) (first and third alterations in original) (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 481-82 (E.D. Pa. 2011)). "Under that standard, the movant prevails 'only if, accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, we determine that the plaintiff is not entitled to relief under any reasonable reading of the complaint.'" In re FBI Wind Down Inc., 741 F. App'x 104, 107 (3d Cir. 2018) (quoting Giudotti, 716 F.3d at 772). "We 'consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" Guidotti, 716 F.3d at 772 (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).

However, there are two circumstances in which the Rule 12(b)(6) standard does not apply: (1) when "'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate," and (2) when "the opposing party has come forth with reliable evidence that is more than a 'naked assertion . . . that it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did." Id. at 774 (alteration in original) (quoting Somerset, 832 F. Supp. 2d at 482; and Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 55 (3d Cir. 1980)). Thus, if the motion to compel does not "establish on its face that the parties agreed to arbitrate," id. at 774, we "use the summary judgment standard under Rule 56(a), in which 'the motion should be granted where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Maddy v. Gen. Elec. Co., 629 F. App'x 437, 440 (3d Cir. 2015) (quoting Flintkote Co. v. Aviva PLC, 769 F.3d 215, 219 (3d Cir. 2014); see also Silfee v. Automatic Data

Processing, Inc., 696 F. App'x 576, 578 (3d Cir. 2017) (stating that, "if a party moves to compel arbitration based on an authentic arbitration agreement that is attached to the complaint, the Rule 12(b)(6) standard is appropriate unless '[the opposing party] has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue'" (quoting Guidotti, 716 F.3d at 776)).

### III. THE MOTION TO COMPEL ARBITRATION

#### A. The Arbitration Act

Plaintiff seeks an order pursuant to Section 4 of the FAA compelling the mediation and, if necessary, arbitration of the claims described in Paragraph 18 through the PBA Program. Section 4 of the FAA provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. When it enacted the FAA, "Congress 'expressed a strong federal policy in favor of resolving disputes through arbitration.'" Flintkote, 769 F.3d at 219 (quoting Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009)). "[W]hen a party resists arbitration under an existing arbitration clause . . . the FAA allows a district court to compel, or enjoin, arbitration as the circumstances may dictate." John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 136 (3d Cir. 1998) (citing 9 U.S.C. §§ 3, 4; PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990)).

"Under the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." Henry Schein, Inc. v. Archer & White Sales, Inc., No. 17-1272, 2019 WL 122164, at *3 (U.S. Jan. 8, 2019) (citng Rent-A-Center, West, Inc. v. Jackson, 561

U.S. 63, 67 (2010)). Thus, when we decide "whether a party may be compelled to arbitrate under the FAA, we first consider '(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" Flintkote, 769 F.3d at 220 (quoting Century Indem., 584 F.3d at 527). All of the Defendants have executed the Operating Agreement and the Buy-Sell Agreement. (See Am. Compl. Ex. A at 31, Ex. B at 9.) As we mentioned above, both of the Agreements require the parties to settle "all claims, controversies and disputes . . . arising under or relating to" the Agreements through mediation and, if necessary, through arbitration under the PBA Program. (Id. Ex. A § 9.13; Ex. B § 7.13.) We conclude, accordingly, that the parties have entered into valid agreements to enter into mediation and/or arbitration of certain disputes. Consequently, our resolution of the Motion to Compel Arbitration requires us to consider whether the disputes described in Paragraph 18 of the Amended Complaint fall within the scope of the arbitration provisions of the Operating Agreement and the Buy-Sell Agreement.[1]

When a court is "deciding whether the parties have agreed to submit a particular grievance to arbitration, [the] court is not to rule on the potential merits of the underlying claims." AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986). Thus, we "have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." Id. at 650; see also Silfee, 696 F. App'x at 577 (stating that, when it decides whether to

---

[1] We previously found, in connection with the Motions to Dismiss, that the claims described in Paragraph 18 of the Amended Complaint plausibly fall within the scope of the Operating Agreement and the Buy-Sell Agreement and concluded that the Amended Complaint alleged "sufficient facts to establish that Plaintiff seeks to mediate and, if necessary, arbitrate, a 'merits-based dispute' that falls within the scope of'" the parties' valid agreements to arbitrate. See Nelson, 2018 WL 1933289, at *5 (quoting Flinkote, 769 F.3d at 220). Now that the pleadings have closed, the instant Motion necessitates reexamination of this issue.

compel arbitration, "the role of the court 'is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator'" (quoting Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 478 (9th Cir. 1991))). Thus, we "may not 'rule on the potential merits of the underlying' claim that is assigned by contract to an arbitrator, 'even if it appears to the court to be frivolous.'" Henry Schein, Inc., 2019 WL 122164, at *4 (quoting AT&T Techs., 475 U.S. at 649-650). "A court has 'no business weighing the merits of the grievance' because the 'agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.'" Id. (quoting AT&T Techs., 475 U.S. at 650). When we decide whether the parties' dispute "falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Century Indem., 584 F.3d at 524 (alteration in original) (quoting AT&T Techs., 475 U.S. at 650; additional citation omitted).

B. Discussion

Plaintiff argues that we should grant the Motion to Compel Arbitration because the claims he seeks to mediate and/or arbitrate through the PBA Program, which he describes in Paragraph 18 of the Amended Complaint, clearly fall within the arbitration clauses of the Operating Agreement and the Buy-Sell Agreement. We concluded, in our April 24, 2018 Memorandum, that the claim asserted in Paragraph 18(a) related to Defendants' alleged failure to pay their proportionate share of the First Niagara Bank line of credit, plausibly falls within the scope of Section III of the Operating Agreement and Section 3.1.1 of the Buy-Sell Agreement. Nelson, 2018 WL 1933289, at *5. We further concluded the claims described in Paragraphs 18(b) and (c)

7

of the Amended Complaint, which allege that Defendants received excessive advance draws from the Firm, left the Firm without giving proper notice, and devoted professional time to creating a new law firm rather than working for the Firm, plausibly fall within the scope of Sections IV, V, and VII of the Operating Agreement. Id. For the most part, Defendants' arguments in opposition to the Motion to Compel Arbitratoin reiterate the arguments they made in their Motions to Dismiss the Amended Complaint. We address those arguments in turn.

  1.  <u>Defendant John M. Clark</u>

Defendant Clark argues that the Motion to Compel Arbitration should be denied because Plaintiff lacks standing to assert the claims he seeks to arbitrate.[2] Clark argues, as he did in his Motion to Dismiss the Amended Complaint, that Plaintiff lacks standing to assert the claims alleged in Paragraph 18 of the Amended Complaint because he did not suffer an injury in fact as a result of the actions described in that Paragraph as any such injuries were actually suffered by the Firm or by First Niagara Bank. Clark does not rely on any documents outside of the Amended Complaint in support of this argument and we thus examine his argument according to the motion to dismiss standard.[3] We previously denied Clark's Motion to Dismiss as to this same argument,

---

  [2] Defendant Clark also argues that the Motion to Compel Arbitration should be denied as premature because not all of the Defendants to this action have filed answers to the Amended Complaint and because he is entitled to seek discovery as to Plaintiff's decision to engage in litigation against some Defendants in Pennsylvania and New York state courts. We conclude however, the that Motion is not premature because all Defendants have filed answers to the Amended Complaint and because Clark has not asked to take any discovery in this case or suggested any specific discovery that would be relevant to the issue of arbitrability. McCarron and Mullen have joined in Clark's argument that the Motion to Compel Arbitration should be denied because they are entitled to discovery on the issue of arbitrability. However, they have also failed to describe any discovery that they believe is necessary on the issue of arbitrability. Accordingly, we reject these arguments.

  [3] We note that Clark's Memorandum mentions October 10, 2017 "correspondence" from the Firm, however, he has not submitted that correspondence to the Court and it is not part of the record.

concluding that Paragraph 18 sufficiently alleged that Plaintiff was injured by the actions of Defendants because he personally had to pay more than his proportionate share to repay the line of credit to First Niagara Bank and because his interest in the Firm was diluted by Defendants' taking excessive advance draws that they did not repay." Nelson, 2018 WL 1933289, at *4. Clark has supplied no evidence that Plaintiff did not suffer an injury as described in Paragraph 18 and has supplied no legal authority to support his argument that Plaintiff lacks standing. Consequently, for the reasons stated in our April 24, 2018 Memorandum, we reject Clark's argument that the Motion to Compel Arbitration should be denied because Plaintiff lacks standing to assert the claims described in Paragraph 18 of the Amended Complaint.

Clark also argues that the Motion to Compel Arbitration should be denied because the Amended Complaint fails to state any claims against him personally on which relief could be granted. Specifically, Clark argues that Plaintiff cannot assert a claim against him for breach of fiduciary duty because he does not owe a fiduciary duty to Plaintiff as a matter of Pennsylvania law. This argument clearly asks us to rule on Clark's defenses to the claims that Plaintiff seeks to raise in arbitration. As we discussed above, we cannot consider the merits of Plaintiff's claims in making a determination as to whether those claims must be arbitrated. See Silfee, 696 F. App'x at 577. Accordingly, we reject Clark's argument that the Motion to Compel Arbitration should be denied because he does not owe a fiduciary duty to Plaintiff.[4]

Clark further argues that the Motion to Compel Arbitration should be denied because Plaintiff has waived his right to seek arbitration by entering into litigation against other members of the firm with respect to other issues. Clark asserted essentially the same argument in his Motion

---

[4] Clark also raised this argument in his Motion to Dismiss the Amended Complaint and we denied the Motion as to this argument. See Nelson, 2018 WL 1933289, at *5-6.

to Dismiss the Amended Complaint and we denied his Motion as to this argument. See Nelson, 2018 WL 1933289, at *7. We apply the motion to dismiss standard to our analysis of this argument because, in his current filing, Clark has submitted no evidence that would establish that Plaintiff has previously litigated any of the claims he seeks to arbitrate through the PBA Program or that he would personally be prejudiced if he were required to participation in the PBA Program after Plaintiff engaged in litigation of other claims against other former members of the Firm in another forum. Consequently, for the reasons stated in our April 24, 2018 Memorandum, we reject Clark's argument that the Motion to Compel Arbitration should be denied because Plaintiff has waived his right to seek arbitration of the claims described in Paragraph 18 of the Amended Complaint by engaging in litigation against other members of the firm in connection with other issues.

2. Defendants Claudia D. McCarron and John F. Mullen

McCarron and Mullen argue that we should deny the Motion to Compel Arbitration as to them because Paragraph 18 does not state arbitrable claims against them. Specifically, they argue that Paragraph 18(a) of the Amended Complaint does not assert an arbitrable claim against them because any claim against them that arises from the repayment of the $4 million line of credit with First Niagara Bank would arise under their individual guaranty agreements with First Niagara, not under the Operating and Buy-Sell Agreements. McCarron states, in an Affidavit, that she and Mullen each executed a Niagara Bank Limited Guaranty Agreement (the "Guaranty") which sets forth their individual obligations to First Niagara Bank in connection with the line of credit.[5] (McCarron Aff. ¶ 1, Ex. 1.) They maintain that all of the members of the Firm entered into these individual Guaranty agreements with First Niagara Bank and, as a result, Plaintiff's claim that he

---

[5] We apply the summary judgment standard to this argument because McCarron and Mullen rely on evidence outside the pleadings.

10

paid more than his individual share of the First Niagara Bank line of credit is a dispute between the Guarantors as Guarantors, not as members of the Firm and thus the claim described in Paragraph 18(a) does not arise under either the Operating Agreement or the Buy-Sell Agreement and it is not subject to arbitration. However, the Guaranty submitted by McCarron is only between McCarron and First Niagara Bank and it includes no provision pursuant to which any Guarantor could seek indemnification from another Guarantor for paying more than his or her proportionate share of the line of credit. Consequently, the claim described in Paragraph 18(a) of the Amended Complaint could not arise under the Guaranty. Moreover, as we previously determined, the claim described in Paragraph 18(a) plausibly falls within the scope of Sections III of the Operating Agreement and Section 3.1.1 of the Buy-Sell Agreement and thus falls within the scope of the arbitration provisions in those Agreements. Nelson, 2018 WL 1933289, at *5. Thus, we reject the argument that the Motion to Compel Arbitration should be denied because the claims necessarily arise under various Guaranty Agreements rather than the Operating and Buy-Sell Agreements.

McCarron and Mullen also argue that they should not be required to arbitrate Plaintiff's claim related to the First Niagara line of credit in Paragraph 18(a) because (1) the Chairman of the Firm did not trigger their obligation to contribute capital relative to the First Niagara Bank line of credit; (2) they left the Firm before their Guarantees were involked by First Niagara Bank; and (3) they have already paid their individual obligations to First Niagara Bank. They also contend that that Paragraph 18(b) fails to state arbitrable claims against them because they were fired and/or constructively discharged and, thus, did not leave the firm without giving proper notice. These arguments are all defenses to liability that should be left for the arbitrator. As we discussed above, the merits of Defendants' defenses to liability are reserved for the arbitrator and our role, in

connection with the instant Motion to Compel, "'is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator.'" Silfee, 696 F. App'x at 577 (quoting Republic of Nicaragua, 937 F.2d at 478. Accordingly, we reject McCarron's and Mullen's arguments that we should deny the Motion to Compel Arbitration based on these defenses to liability.

McCarron and Mullen further argue that we should deny the Motion to Compel Arbitration because the claim described in Paragraph 18(b) related to the payment of excess draws belongs to the Firm and not to Plaintiff. McCarron and Mullen also made this argument in connection with their Motion to Dismiss the Amended Complaint and we denied that Motion as to this argument. See Nelson, 2018 WL 1933289, at *4. McCarron and Mullen presently cite no authority to support this argument. Consequently, for the reasons stated in our April 24, 2018 Memorandum, we reject McCarron's and Mullen's argument that we should deny the Motion to Compel Arbitration because the claim described in Paragraph 18(b) belongs to the firm and not to Plaintiff. McCarron and Mullen also incorporate by reference all of the arguments that they made in their Motion to Dismiss the Amended Complaint. They have not supplied any new authority or evidence in support of those arguments. Accordingly, we reject those arguments for the reasons stated in our April 24, 2018 Memorandum.

### 3.   Defendants Kenneth Levine and Daniel de Luca

Defendants Levine and de Luca argue that we should deny the Motion to Compel Arbitration because the prerequisites to filing a Motion pursuant to the FAA were not satisfied before Plaintiff filed this action. Specifically, Levine and de Luca argue that Plaintiff failed to personally seek mediation or arbitration as required by 9 U.S.C. § 4 prior to filing the instant lawsuit and that they did not refuse to participate in any such mediation or arbitration. Levine and

de Luca raised their argument that Plaintiff failed to comply with 9 U.S.C. § 4 because he did not personally seek mediation or arbitration prior to filing the instant lawsuit in their Motion to Dismiss the Amended Complaint and we denied their Motion as to this argument.[6] Id. at *7. Levine and de Luca have not supplied any new argument or evidence in support of this argument and we deny it for the reasons set forth in our April 24, 2018 Memorandum. Levine and de Luca have also failed to provide any support for their argument that we should deny the Motion to Compel Arbitration because they did not refuse to participate in mediation or arbitration prior to Plaintiff filing the instant lawsuit. They have, however, admitted that they have not signed the PBA mediation agreement or paid the fee for mediation pursuant to the PBA Program. (Levine and de Luca Ans. ¶ 26.) Accordingly, we conclude, based on the record before us, that Levine and de Luca have failed, neglected, or refused to mediate and/or arbitrate Plaintiff's claims under the parties' written agreements, therefore satisfying the requirement of 9 U.S.C. § 4, that a party must be "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" before seeking an order compelling arbitration. We therefore reject Levine's and de Luca's argument that the Motion to Compel Arbitration should be denied because Plaintiff failed to satisfy the prerequisites to filing provided by § 4 of the FAA prior to filing the instant lawsuit.

Levine and de Luca also assert that we should deny the Motion to Compel Arbitration because we lack subject matter jurisdiction over this action. They contend that the Firm is a necessary and indispensable party to this lawsuit and that its joinder would destroy diversity jurisdiction. This type of argument is typically analyzed pursuant to Federal Rule of Civil Procedure 12(b)(7). Hamilton made this argument in his Motion to Dismiss the Amended

---

[6] As Levine and de Luca rely on no evidence outside the pleadings, we analyze these arguments under the motion to dismiss standard.

Complaint and we denied that aspect of his Motion on the ground that it asserted a defense to the merits of Plaintiff's claims that must be left for the arbitrator. See Nelson, 2018 WL 1933289, at *8. Levine and de Luca claim that our previous decision was erroneous because we are required to examine the merits of defenses that relate to subject matter jurisdiction. They rely on Vaden v. Discover Bank, 556 U.S. 49 (2009), which concludes that "[a] federal court may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law; in keeping with the well-pleaded complaint rule . . . ." Id. at 62. Levine and de Luca assert that the Firm is a necessary party with respect to Plaintiff's claims relating to the First Niagara Bank line of credit and the "advance draws." They do not, however, support their assertion with citation to legal authority or to evidence in the record. Nonetheless, to the extent that Levine and de Luca argue that the Firm is a necessary party because any money they owe is owed to the Firm rather than to Plaintff, that argument is a defense to liability that we cannot address in this proceeding. See Silfee, 696 F. App'x at 577 (stating that the merits of any defenses are to be left "to the arbitrator" (quotation omitted)). Accordingly, we reject the argument made by Levine and de Luca that we should deny the Motion to Compel Arbitration because the Firm's required joinder would destroy our subject matter jurisdiction.

    C.    Conclusion

For the reasons stated above, we reject all of the arguments made by Defendants Clark, McCarron, Mullen, Levine, and de Luca, that we should deny the Motion to Compel Arbitration. Accordingly, we conclude that the parties have entered into valid agreements to arbitrate and that the claims described in Paragraph 18 of the Amended Complaint plausibly fall within the scope of those agreements. See Flintkote, 769 F.3d at 220 (quoting Century Indem., 584 F.3d at 527).

## IV. CROSS MOTION FOR JUDGMENT ON THE PLEADINGS OR SUMMARY JUDGMENT

Hamilton asks that we deny Plaintiff's Motion to Compel Arbitration and, instead, grant judgment in favor of Hamilton and against Plaintiff either based on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or on summary judgment pursuant to Federal Rule of Civil Procedure 56. Hamilton argues that he is entitled to judgment in his favor for three reasons: (1) Plaintiff failed to personally seek mediation/arbitration as required by 9 U.S.C. § 4 prior to filing the instant lawsuit; (2) the Firm is a necessary and indispensable party to this litigation whose joinder would destroy our subject matter jurisdiction; and (3) the Amended Complaint lacks sufficient specificity for the Court to determine whether Hamilton has a duty to arbitrate the claims described in Paragraph 18. These arguments were all raised in the Motions to Dismiss the Amended Complaint, which we denied.

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(c) motions based on the theory that the plaintiff has failed to state a claim are reviewed under the same pleading standards that apply to motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Revell v. Port Auth., 598 F.3d 128, 134 (3d Cir. 2010) (citation omitted); Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004).

Federal Rule of Civil Procedure 56 provides that the entry of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

  B. Discussion

    1. Demand for Arbitration

Hamilton argues that the Motion to Compel Arbitration should be denied, and that his Cross Motion should be granted, because Plaintiff failed to personally demand arbitration prior to filing the instant lawsuit. This argument was raised by Levine, de Luca, McCarron and Mullen in their Motions to Dismiss the Amended Complaint and we denied their Motions to Dismiss as to that argument. See Nelson, 2018 WL 1933289, at *7. In his Cross Motion, Hamilton reiterates the arguments made by Levine, de Luca, McCarron and Mullen that Plaintiff invoked the mediation and arbitration process under the rules of the PBA program on behalf of the Firm, not himself, and, therefore, he did not personally satisfy the prior arbitration demand requirement of 9 U.S.C. § 4. He relies on emails sent by Plaintiff and by Louann Bell of the PBA, including a February 14, 2017 email that was not part of the record in connection with the Motions to Dismiss.

Since Hamilton relies on a document that is not part of the pleadings, we apply the Rule 56 standard to this argument. As we discussed in our April 24, 2018 Memorandum, Plaintiff sent an email to the PBA requesting mediation under the PBA Program on January 23, 2017 from his personal email account and made it clear that he was seeking resolution of disputes between the shareholders, not disputes between the Firm and shareholders. (See Am. Comp. Ex. D at 5 of 7.) We previously concluded that this email "was a step taken by Plaintiff to effectuate the mediation and, if necessary, arbitration of his own personal claims" which satisfied 9 U.S.C. § 4. Nelson, 2018 WL 1933289, at *7. On February 14, 2017, in response to an email that Levine sent to Bell stating that he could not proceed with the PBA Program until the issues to be raised in that program

were spelled out, Nelson stated that it was "the firm's position and [his] position that the shareholders of the firm breached the terms of the shareholder agreement and that breach has caused damages and will require the shareholders to make the firm whole." (Hamilton Ex. 3.) While Plaintiff's statement in this email is not wholly consistent with the statement he made in his January 27, 2017 email, it does not unequivocally establish that Plaintiff sought mediation through the PBA Program solely on behalf of the Firm and not on his own behalf. Consequently, we conclude that Hamilton has not established that he is entitled to entry of judgment as matter of law with respect to the Motion to Compel arbitration because Plaintiff failed to demand arbitration on his own behalf prior to filing the instant lawsuit. Accordingly, we deny the Cross Motion as to this argument.

2. The Firm

Hamilton argues that the Motion to Compel Arbitration should be denied, and that his Cross Motion should be granted, because the Firm is a necessary and indispensable party to this lawsuit whose joinder would destroy our subject matter jurisdiction. As we discussed above, Hamilton raised this argument in his Motion to Dismiss the Amended Complaint and we denied his Motion to Dismiss as to this argument. See Nelson, 2018 WL 1933289, at *8. We concluded, in our April 24, 2018 Memorandum, that Hamilton's arguments that the Firm is a necessary party to this lawsuit assert a defense to the merits of Plaintiff's claims, not to the issue of arbitrability. His arguments in the instant Cross Motions are no different. Hamilton argues that the Firm is a necessary party to this lawsuit because, to the extent that there is a finding of liability with respect to the advance draws and capital contributions alleged in Paragraph 18 of the Amended Complaint, any damages should be paid to the Firm rather than to Plaintiff. However, as we discussed in our April 24, 2018 Memorandum, "[w]e cannot determine in this proceeding whether the Defendants breached

duties owed to the Firm rather than to Plaintiff because we are required to 'leav[e] the merits of [Plaintiff's] claim[s] and any defenses to the arbitrator.'" Id. (quoting Silfee, 696 F. App'x at 577). Accordingly, we deny the Cross Motion with respect to this argument.

### 3. Lack of Specificity in the Amended Complaint

Hamilton argues that the Motion to Compel Arbitration should be denied because the Amended Complaint fails to allege Plaintiff's claims against the Defendants with sufficient specificity to allow us to determine whether Plaintiff's claims fall within the scope of the parties' agreements to arbitrate. Hamilton does not rely on any evidence outside of the pleadings in connection with this argument, so we apply the Rule 12(b)(6) standard to this argument. McCarron and Mullen previously made this argument in their Motion to Dismiss the Amended Complaint, and we denied their Motion as to this argument, finding that "the claims described in Paragraph 18 of the Amended Complaint plausibly fall within the scope of the Operating Agreement and the Buy-Sell Agreement." See id. at *5. Hamilton does not cover any new ground in this argument. Accordingly, we deny the Cross Motion as to this argument for the reasons set forth in our April 24, 2018 Memorandum.

## V. CONCLUSION

For the reasons stated above, we reject all of the arguments made by Defendants in opposition to the Motion to Compel Arbitration and we grant that Motion. We also deny Hamilton's "Cross Motion for Judgment on the Pleadings Pursuant to F.R.C.P. 12(c), or in the Alternative, Summary Judgment Pursuant to F.R.C.P. 56."

Plaintiff asks that we stay this proceeding pending the arbitration of his claims pursuant to Section 3 of the FAA, which provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon
> any issue referable to arbitration under an agreement in writing for such arbitration,

> the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Defendant Hamilton opposes Plaintiff's request for a stay. However, the United States Court of Appeals for the Third Circuit has instructed that "the plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." Lloyd v. HOVENSA, LLC, 369 F.3d 263, 269 (3d Cir. 2004). As the Third Circuit has explained, the district court maintains an ongoing role after a case is referred to arbitration, which involves "resolving disputes regarding the appointment of an arbitrator, compelling witnesses, and entering judgment on an award." Devon Robotics, LLC v. DeViedma, 798 F.3d 136, 143-44 (3d Cir. 2015) (citing Lloyd, 369 F.3d at 270). Accordingly, we grant Plaintiff's request that this proceeding be stayed while the parties mediate and/or arbitrate their claims pursuant to the PBA Program. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.